**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRENDA FORMAN, | : | |
| Plaintiff | : | No.  2:24-CV-00266 |
| | : | |
| v. | : | **Judge Ranjan** |
| | : | |
| AL SCHMIDT, | : | **Electronically Filed Document** |
| Defendant | : | |

**BRIEF IN SUPPORT OF THE SECRETARY'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT**

AND NOW, comes the Defendant, Secretary of the Commonwealth Al Schmidt ("Secretary"), by his attorney, Meghan A. Flowers, Deputy Attorney General, Civil Litigation Section, and hereby files this Brief in Support of the Secretary's Motion to Dismiss the Second Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Brenda Forman ("Plaintiff") appears to claim that voting systems used in the Commonwealth are not certified and, therefore the Secretary has violated various statutes including the Help America Vote Act of 2002, Section 2 of the "National Voting Rights Act", and various U.S. Constitutional provisions.  Yet her latest attempt to state a cognizable claim in her Complaint fares no better than her previous ones. Although Plaintiff has changed the structure of her Amended Complaint, the substance of the Complaint is substantially the same. Plaintiff has failed to cure any of the deficiencies which resulted in this Court's dismissal of her Amended Complaint.  Specifically, Plaintiff has not, and cannot, establish standing, which divests this Court of subject matter jurisdiction.  Further, even if she was somehow able to surmount this fatal

jurisdictional hurdle, Plaintiff still has failed to allege any lucid facts that could support any conceivable cause of action against the Secretary. Accordingly, the Second Amended Complaint must be dismissed with prejudice.

## II.  BACKGROUND

### A.  Procedural History

Plaintiff initiated this action by filing a *pro se* Complaint on March 4, 2024. [ECF 1]. The Secretary moved to dismiss Plaintiff's Complaint on April 2, 2024. [ECF 8]. Plaintiff filed an Amended Complaint on April 1, 2024, however, the Secretary did not get notice of the filing until after the filing of the Motion to Dismiss. [ECF 10]. The Secretary moved to dismiss Plaintiff's Amended Complaint on April 15, 2024. [ECF 13]. The Court issued an order on October 29, 2024 granting the Secretary's Motion to Dismiss Amended Complaint finding that Plaintiff lacks standing and the Amended Complaint failed to state a claim. [ECF 18]. The Court allowed Plaintiff leave to amend to try to cure the defects in the Amended Complaint. [ECF 18].

On November 27, 2024, Plaintiff filed a pleading styled as an "Opposition Brief in Response to the Motion to Dismiss". [ECF 19]. The Court docketed this Brief as a Second Amended Complaint. [ECF 20].

### B.  Allegations of Second Amended Complaint

Plaintiff alleges she is an Allegheny County resident and voter.    Second Am. Compl. ("SAC") ECF 20, ¶ I.  She further alleges that the Secretary "has ignored facts" showing that "election machines/systems utilized in Pennsylvania elections are not certified in compliance with Federal and State code." Id. ECF 20, ¶ IV.  She further claims that the use of "unlawfully certified" voting systems violate her rights to participate in free and fair elections and that this "lack of action" by the Secretary violates the Help America Vote Act ("HAVA"), Section 2 of the Voting

Rights Act, and various Constitutional provisions. Id. ECF 20, p. 6, 10. Plaintiff questions whether any of the elections since 2017 are "legal and valid." Id. ECF 20, p. 5. Though she acknowledges that voting systems used in the Commonwealth must meet federal voting system standards and references various Pennsylvania Election Code provisions giving the Secretary the authority to examine and approve electronic voting systems for use in the Commonwealth, Plaintiff asserts that the Secretary has violated "federal, state, and constitutional laws." Id. ECF 20, p. 7-9. Plaintiff further alleges that the Secretary certified the November 7, 2023 General Election despite the use of "unlawfully certified voting systems to obtain election results". Id. ECF 20, p. 9. She questions whether her vote was counted and claims "she was forced to use potentially vulnerable, and proven illegal (via lack of proper certification) voting machines/ systems during multiple elections causing her duress". Id. ECF 20, p. 13.

Plaintiff seeks "an emergency injunction" requesting, *inter alia*, that ES&S voting systems not be used in Allegheny County or the Commonwealth. Id. ECF 20, p.8. She also appears to seek an Order that electronic voting systems be discontinued and that all ballots (whether in Allegheny County or throughout the Commonwealth it is not clear) be hand-marked and manually counted. Id. ECF 20, p. 11. Absent from her pleading is any legal basis for such relief or any explanation of how the Secretary could provide it.

### C. Legal Framework

The Help America Vote Act ("HAVA") of 2002, 52 U.S.C. §§20901-21145, enacted after the 2000 Presidential election, was designed to achieve reforms "to improve our country's election system." *See* H.R. REP. No. 107-329, at 31 (2001) ("The circumstances surrounding the election that took place in November 2000 brought an increased focus on the process of election administration, and highlighted the need for improvements. The Help America Vote Act ... will

make it possible to implement needed improvements"). HAVA was passed to ensure that eligible voters would not be disenfranchised and that voting and election administration systems will "be the most convenient, accessible, and easy to use for voters" and "will be nondiscriminatory and afford each registered and eligible voter an equal opportunity to vote and have that vote counted." 52 U.S.C. § 20981. Through HAVA, Congress provided funding to assist state and local governments in replacing "punch card voting systems or lever voting systems." 52 U.S.C. § 20902(a)(2).

Title III of HAVA—codified as Subchapter III and consisting of 52 U.S.C. §§ 21081–21102—created new mandatory minimum standards for states to follow in several key areas of election administration, including standards for electronic voting systems. 52 U.S.C. § 21081. HAVA also established the Election Assistance Commission (the "EAC") and tasked it with accrediting testing laboratories and certifying voting systems for use in Federal elections. 52 U.S.C. §§ 20921, 20971.

Under Section 1105-A of the Pennsylvania Election Code, 25 P.S. § 3031.5, the Secretary is required to examine and approve electronic voting systems for use in the Commonwealth. Only voting systems certified by the EAC may be examined, and thus ultimately certified, by the Secretary. 25 P.S. § 3031.5(a). Section 302(c), of the Election Code, 25 P.S. §2642, provides counties with the authority to decide which approved voting system to use. Accordingly, it is Allegheny County (who is not a defendant here), not the Secretary, who determines which both federally and Commonwealth-approved voting system is to be used in its elections.[1]

---

[1] Of course, any attempt to assert a similar claim against Allegheny County would suffer the same impairments as the instant SAC.

As required by Pennsylvania law, all voting systems used in Pennsylvania's 67 counties have been certified by the EAC and approved for use by the Secretary. The Department of State website provides links to the certifications for the voting systems used in each and every county. See, e.g., Allegheny County Voting System, DOS Voting & Election Information (available at https://www.vote.pa.gov/readytovote/Pages/Allegheny-County-Voting-System.aspx). Putting aside her conclusory allegations, Plaintiff has put forth no facts to support her claim that the electronic voting system used in Allegheny County (or voting systems used anywhere else in the Commonwealth) are not certified pursuant to Federal and Pennsylvania law.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), a court lacking subject matter jurisdiction over a case must dismiss it. Kerchner v. Obama, 612 F.3d 204, 207 (3d Cir. 2010) ("It is axiomatic that standing to sue is a prerequisite to Article III jurisdiction.") The burden of showing that jurisdiction is proper rests upon the party asserting that jurisdiction. Kokkonen v. Guardian Life Ins. Co. Of Am., 511 U.S. 375, 377 (1994).

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P 12(b)(6), the Court must "accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of [the plaintiff]," but "need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007) (rejecting the "no set of facts" standard") and Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (finding that a complaint must do more than allege the plaintiff's entitlement to relief but rather 'show' such an entitlement via its facts.). The Court need not accept legal conclusions or inferences drawn by plaintiff if unsupported by the facts set forth in the complaint. Twombly, 550

U.S. at 1965. Notwithstanding the liberality accorded to *pro se* pleaders, they are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

### IV.    ARGUMENT

#### A. Plaintiff lacks standing to bring this action.

Plaintiff has done nothing to cure the standing defects that resulted in the dismissal of her Amended Complaint. Accordingly, the SAC should be dismissed because Plaintiff lacks standing to bring this action. Inquiry into standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Whether a party has standing is a threshold jurisdictional question which a court must address prior to and independent of the merits of a party's claims. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). Thus, a court only has jurisdiction over a case if the plaintiff has standing to sue. See Kerchner v. Obama, 612 F.3d 204, 207 (3d Cir. 2010).

To establish standing, the plaintiff must show he has suffered or will suffer an injury in fact that is caused by the conduct of the defendant and that can be redressed by the court. Berg v. Obama, 586 F.3d 234, 239 (3d Cir. 2009) (citing Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006)). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotations omitted). A generalized grievance that is "undifferentiated and common to all members of the public" is insufficient to establish standing Lujan, 504 U.S. at 575. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Warth v. Seldin, 422 U.S. 490, 499 (1975) (citation omitted).

As the Third Circuit has recognized, "[w]hen the alleged injury is undifferentiated and common to all members of the public, courts routinely dismiss such cases as 'generalized grievances' that cannot support standing." Bognet v. Secretary Commonwealth of Pennsylvania, 980 F.3d 336, 349 (3d Cir.), *vacated as moot* by Bognet v. Degraffenreid, 141 S. Ct. 2508 (2021).

That is so here. Plaintiff claims that voters cannot verify their votes and that, therefore, elections are not free and fair. See SAC ECF 20, p 6. She admits that she was able to vote but asserts that she worries that her vote might potentially not count due to hypothetical and undescribed vulnerabilities in voting systems. Id. ECF 20, p.13. Such speculative averments of generalized injury equally affecting all voters are plainly insufficient to confer standing. See Bognet, 980 F.3d at 352 (dismissing voters' claim that their votes were "diluted" by certain mailed ballots for lack of standing); see also Christie v. President of the United States, 532 Fed. Appx. 88, 89 (3d Cir. 2013); (Plaintiff lacked standing to assert claims that President committed treason); Wood v. Raffensperger, 981 F.3d 1307, 1314-15 (11th Cir. 2020) (dismissing claim based on interest that "only lawful ballots are counted" as generalized grievance insufficient for standing); Samuel v. Virgin Islands Joint Bd. of Elections, Civ. No. 2012-0094, 2013 WL 842946, at **4-5 (D. V.I. March 7, 2013) (dismissing claims regarding alleged failure to use non-EAC certified voting machine for lack of standing). As Judge Conner recently recognized, complaints that the law has not been followed are "precisely the kind of undifferentiated, generalized grievance" that the Supreme Court has "refused to countenance". See Reschenthaler v. Schmidt, Civ. No. 24-1671, 2024 WL 4608582, at *7 (M.D. Pa. Oct. 29, 2024) (citing Lance v. Coffman, 549 U.S. 437, 442 (2007)). Plaintiff readily concedes that this case is no different, making vague assertions as to voting systems used by all voters. See SAC ECF 20, ¶ V.

Additionally, to the extent that Plaintiff claims her interest in this litigation is ensuring that all voters may exercise the right to participate in free (not under the control of others) and fair (free from suspicion or bias; reasonable) elections, id., such claims are similarly insufficient to confer standing. Throughout the SAC, Plaintiff states that she was able to vote, but was "forced to use a potentially vulnerable, and proven illegal voting machines/systems during multiple elections causing duress" and tarnishing her faith in elections. See SAC ECF 20, p. 13. Such interests similar to interests that that "only lawful ballots are counted" or that "government be administered according to the law" are generalized interests that do not permit standing. Wood, 981 F.3d at 1314. Restoration of one's faith in elections is not redress a court can provide. Nor is any such injury caused by the conduct of the Secretary or capable of being redressed by the Secretary.

Plaintiff's claimed harm is neither concrete nor particularized enough to satisfy Article III standing. Accordingly, this Court should dismiss the SAC on this basis alone.

**B. The Second Amended Complaint Fails to State Any Cognizable Claims for Relief.**

Even if Plaintiff could somehow overcome the fatal jurisdictional obstacle of her lack of standing, the SAC must be dismissed for failure to state any claim.

**1. Plaintiff fails to state a claim under HAVA.**

Plaintiff purports to state a claim under HAVA. The basis of that claim and what specific section of HAVA she claims to be violated is unclear but that is of no matter. What is clear is that, as courts have repeatedly found, there is no private right of action under HAVA. It is well-established that "'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought.'" Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (quoting DaimlerChrysler Corp., 547 U.S. at 352)). There is no private right to enforce a federal statute unless Congress clearly confers such a right. Gonzaga Univ. v. Doe, 536 U.S. 273, 280

8

(2002). HAVA contains no such provision. Instead, in its enforcement section, it contains a provision allowing actions by the Attorney General for declaratory and injunctive relief, 52 U.S.C. § 21111, and requires states to establish state-based administrative complaint procedures, 52 U.S.C. § 21112. Pennsylvania has done this. See 25 P.S. § 3046.2.

Though it is not clear, Plaintiff presumably is attempting to state a claim under Section 301 of HAVA relating to requirements for voting systems to be used in federal elections. 52 U.S.C. § 21081.[2] As the Third Circuit has recognized, HAVA does not include a private right of action for aggrieved parties. American Civil Rights Union v. Philadelphia City Commissioners, 872 F.3d 175, 181 (3d Cir. 2017) (stating "HAVA does not include a private right of action that allows aggrieved parties to sue nonconforming states."); see also Taylor v. Onorato, 428 F.Supp. 2d 384, 387 (W.D. Pa. 2006) (holding HAVA neither contains private right of action to enforce Section 301 nor creates action against state officials under Section 1983); Samuel, 2013 WL 842946 at *6 (dismissing claim based upon HAVA requirements for voting systems).

Plaintiff has failed to allege any facts as to support any claim that the voting system used by Allegheny County fails to meet HAVA standards, nor could she. But even if she did, there exists no private right of action to enforce such a claim in any event. Accordingly, any claim based upon HAVA must be dismissed.

**2. Plaintiff fails to state a claim under the National Voting Registration Act.**

Plaintiff's attempts to assert other causes of action are additionally insufficient to state any claim. To the extent that she is attempting to state a claim under the National Voting Registration Act ("NVRA") (52 U.S.C. §§ 20501-20511), Plaintiff has failed to allege any facts to support it.

---

[2] Of course, the 2023 Municipal Election, the Secretary's certification of which Plaintiff appears to find fault, SAC, ECF 20, p. 9, was not a federal election.

Section 2 of the NVRA simply states the Act's findings and purpose.  The provisions of the NVRA concern voter registration and voter roll maintenance. See 52 U.S.C. §§ 20503-20508.  While there does exist a private right of action for those aggrieved by a violation of the NVRA, see 52 U.S.C. § 20510, Plaintiff has not plead any facts to support any violation of the NVRA.  The SAC revolves around allegations regarding voting systems and simply has no connection to the NVRA.  Accordingly, any such claim on this basis should be dismissed.

**3.  Plaintiff fails to state a claim pursuant to Section 2 of the Voting Rights Act.**

Plaintiff also purports to state a claim pursuant to Section 2 of the Voting Rights Act, 52 U.S.C. §§ 10301-10314.  That attempt fails as well. This section prevents denial or abridgement of the right to vote on account of race or color.  See gen. 52 U.S.C. §10301. Plaintiff has not and cannot allege any facts to support her claim that the Secretary denied or abridged her right to vote at all, much less on the basis of race or color.  Plaintiff admits that she voted. See SAC ECF 20, p. 13.  As such, Plaintiff has not stated a claim under Section 2 of the Voting Rights Act.

Finally, while the SAC references several Constitutional amendments, it fails to allege any facts to support any Constitutional claims against the Secretary.  The Third Circuit has agreed that after Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  Plaintiff's claims that the Secretary's certification of voting systems used in Pennsylvania elections

pursuant to his duties under Pennsylvania law somehow violate her Constitutional rights are baseless. Accordingly, this Court should dismiss Plaintiff's claim.[3]

## V.    CONCLUSION

Although offered another opportunity to allege a viable complaint that survives the pleading standards of Rule 12, Plaintiff has again failed to do so. Plaintiff has not suffered any redressable injury caused by the Secretary. Her unsupported complaints about voting systems are the type of generalized grievance routinely deemed insufficient for standing in Federal court. Moreover, Plaintiff has not (and cannot) plead any facts to show she is entitled to relief against the Secretary under any cause of action she conclusively alleges. Plaintiff has failed to cure any of the deficiencies in her Amended Complaint.. For all of these reasons, the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:   *s/ Meghan A. Flowers*
MEGHAN A. FLOWERS
Deputy Attorney General
Attorney ID 326721

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-3017
mflowers@attorneygeneral.gov

Nicole R. DiTomo
Chief Deputy Attorney General
Civil Litigation Section

---

[3] It appears Plaintiff has abandoned arguments based on any previous causes of action she asserted, but to the extent she is seeking to discontinue the use of electronic voting systems pursuant to the referendum provisions in Sections 3031.2-4 of the Election Code, those provisions have been preempted by HAVA as explained in Kuznik v. Westmoreland County Board of Commisioners, 902 A.2d 476,493 (Pa. 2006). ("A referendum requiring approval of a change that is mandated by the federal government to insure the most fundamental right to vote constitutes an obstacle to the accomplishment of the federal legislation and, as such, is preempted.").

Counsel for the Secretary


Pennsylvania Department of State
Kathleen A. Mullen
Deputy Chief Counsel
Attorney ID 84604
306 North Office Bldg.
401 North Street
Harrisburg, PA  17120-0500
(717) 783-0736
kamullen@pa.gov

Date:  December 11, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **BRENDA FORMAN,** | **:** | | |
| | **Plaintiff** | **:** | **No.  2:24-CV-00266** |
| | | **:** | |
| **v.** | | **:** | **Judge Ranjan** |
| | | **:** | |
| **AL SCHMIDT,** | | **:** | **Electronically Filed Document** |
| | **Defendant** | **:** | |

**CERTIFICATE OF SERVICE**

I, Meghan A. Flowers, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on December 11, 2024, I caused to be served a true and correct copy of the foregoing document titled BRIEF IN SUPPORT OF THE SECRETARY'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT to the following:

**VIA U.S. MAIL**

**Brenda Forman
5301 5th Avenue #9
Pittsburgh, PA  15232**
*Pro Se Plaintiff*

 *s/ Meghan A. Flowers*
**MEGHAN A. FLOWERS
Deputy Attorney General**

13